**Bernard T. MOYNAHAN, Jr., Plaintiff,**

v.

**The UNITED STATES of America, et al., Defendants.**

No. 85–147.

United States District Court,
E.D. Kentucky,
Lexington Division.

Sept. 20, 1985.

David R. Irvin, Bulleit, Kinkead, Irvin & Reinhardt, Lexington, Ky., Bernard T. Moynahan, Jr., Nicholasville, Ky., for plaintiff.

Hermes Fernandez, Richard Greenberg, Judith F. Ledbetter, Attys., U.S. Dept. of Justice, Robert Loesche, Deputy Gen. Counsel, Richard K. Willard, Acting Asst. Atty. Gen., Joseph F. Spaniol Jr., Deputy Director, Washington, D.C., for defendants.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter came on for consideration on defendants' motion to dismiss (doc. 8), and memorandum in support thereof (doc. 9), plaintiff's brief in opposition (doc. 10), defendants' reply memorandum (doc. 12), and plaintiff's supplemental brief (doc. 14). Oral argument was held on August 15, 1985. By stipulation, the parties have agreed that the cause now before us—that is, interpretation of 28 U.S.C. § 371 and 5 U.S.C. §§ 8701(a), 8706, and 8714a, b, as amended—may be treated as if submitted on cross motions for summary judgment (*see* doc. 15).[1] We sit today, pursuant to provisions of 28 U.S.C. § 292(b) and the Order of Chief Judge Lively, as a district

---

1. Those portions of the briefs relating to estoppel neither will be discussed nor ruled upon. The parties reserve the right, however, to litigate with respect to plaintiff's claims of estoppel at some future date.

court in the Eastern District of Kentucky at Lexington (*see* doc. 4).

Before we proceed with the facts of this case and our analysis of the law, we begin with a bit of background. In the context of the question presented to us, we shall group federal judges into four categories. They are: (1) active judges; (2) senior judges—that is, judges who, after satisfying the "rule of 80" requirements, retain their office but retire from regular active service; (3) judges who, after satisfying the "rule of 80" requirements, retire completely from their office; and (4) judges who, before satisfying the "rule of 80" requirements, retire completely from their office. *See* 28 U.S.C. § 371.[2] This Opinion concerns only those judges that comprise category three. These judges, henceforth dubbed "retired 'rule of 80'" judges, are those jurists who, upon satisfying the "rule of 80," have opted to retire completely from their office rather than retire only from regular active service. In other words, these judges retire from the Bench rather than take senior status.

The question presented is a straightforward one and asks whether a federal judge who retired from the Bench under the "rule of 80" is entitled to the same level of coverage under the Federal Employees' Group Life Insurance (FEGLI) plan that he received while on the Bench. For the reasons set forth below, we rule that a federal judge is entitled to such coverage, without interruption or diminution, and thus decide in plaintiff's favor.

Before setting forth some facts and explaining the theories the parties advocate, we turn to the pertinent statutes. Under FEGLI, once a federal "employee" retires, his or her insurance coverage is reduced. *See, e.g.,* 5 U.S.C. §§ 8706(b)(3), 8714a(c)(2), 8714b(c)(2).[3] The statutory definition of

2. The actual statutory language is reprinted below:

> (a) Any justice or judge of the United States appointed to hold office during good behavior may retire from the office after attaining the age and meeting the service requirements, whether continuous or otherwise, of subsection (c) and shall, during the remainder of his lifetime, receive an annuity equal to the salary he was receiving at the time he retired.
>
> (b) Any justice or judge of the United States appointed to hold office during good behavior may retain the office but retire from regular active service after attaining the age and meeting the service requirements, whether continuous or otherwise, of subsection (c) of this section and shall, during the remainder of his lifetime, continue to receive the salary of the office.
>
> (c) The age and service requirements for retirement under this section are as follows:

| Attained age: | Years of Service |
|---|---|
| 65 | 15 |
| 66 | 14 |
| 67 | 13 |
| 68 | 12 |
| 69 | 11 |
| 70 | 10 |

> (d) The President shall appoint, by and with the advice and consent of the Senate, a successor to a justice or judge who retires under this section.

28 U.S.C. § 371. The "rule of 80" permits a judge to retire and receive an annuity equal to the salary he or she was receiving at the time he or she retired if his or her age plus the number of years of service yield a figure of eighty. The earliest age at which one may retire, however, as the statute indicates, is sixty-five years.

3. For example, 5 U.S.C. § 8714a reads in relevant part:

> . . . .
> (c)(1) The optional insurance on an employee stops on his separation from service, 12 months after discontinuance of his pay, or on his entry on active duty or active duty for training, as provided in sections 8706(a) and 8706(c) of this title.
>
> (2)(A) In the case of any employee who retires on an immediate annuity and has been insured under this section throughout—
> (i) The 5 years of service immediately preceding the date of such retirement, or
> (ii) the full period or periods of service during which the employee was entitled to be insured, if less than 5 years,
> the amount of optional life insurance only which has been in force throughout such period may be continued, under conditions determined by the Office.
>
> . . . .
> (C) The amount of optional life insurance continued under subparagraph (A) or subparagraph (B) of this paragraph shall be reduced by 2 percent at the end of each full calendar month after the date the employee becomes 65 years of age and is retired or is receiving compensation for disease or injury. The Office shall prescribe minimum amounts, not less than 25 percent of the amount of life insurance in force before the first reduction, to which the insurance may be reduced.

"employee" was amended in 1984 to include specifically:

> *a* justice or *judge* of the United States appointed to hold office during good behavior (i) who is in regular active judicial service, or (ii) who is retired from regular active service under section 371(b) or 372(a) of title 28, United States Code, or (iii) *who has resigned the judicial office* under section 371(a) of title 28 with the continued right during the remainder of his lifetime to receive the salary of the office at the time of his resignation.

5 U.S.C. § 8701(a)(5) (emphasis added).

At 12:00 a.m. on September 30, 1984, plaintiff left the Bench, retiring from active status as a United States District Judge for the Eastern District of Kentucky. Prior to retiring from the Bench, however, he made certain inquiries concerning the future status of his life insurance coverage. General Counsel to the Administrative Office of the United States Courts advised him that "judges retiring under section 371(a) with sufficient seniority to be eligible for an annuity [4] are for the *first time* entitled to continue their Federal life insurance coverage *without interruption or diminution*" (*see* doc. 1, exh. B) (emphasis ours). Allegedly relying on this advice, and on correspondence that plaintiff terms supportive (*see infra* pp. 280–281), plaintiff retired, only to be informed subsequently that his optional life insurance was to be reduced gradually to $2,500.00, that his accidental death and dismemberment coverage had terminated, and that his additional optional group life insurance was to be reduced gradually until it terminated at the end of fifty months. This lawsuit was filed; plaintiff seeks declaratory and injunctive relief that requires defendants to permit him to keep his FEGLI coverage, including all optional coverage, in full force and effect and without diminution.

Plaintiff maintains that § 8701(a)(5)(iii) or retired "rule of 80" judges are not subject to the statutory reductions in insurance coverage. Plaintiff's logic, divided by the Court into four parts, breaks down in this fashion: Congress, in amending section 8701(a), included retired "rule of 80" judges within the definition of "employee." Congress, by virtue of sections 8706(b)(3), 8714a(c)(2), and 8714b(c)(2), mandates that a federal "employee" suffer a reduction in his or her life insurance coverage upon retirement. An employee who, by definition, already is retired cannot be expected to retire again. Consequently, Congress, as a matter of common sense, did not intend, as it did with respect to any other federal employee upon retirement, for "rule of 80" judges, upon retirement from the Bench, to suffer a reduction in their life insurance coverage.[5] To put plaintiff's theory in context, and using the section relating to Optional Insurance as an example, plaintiff thinks it absurd that Congress intended the statute to read as follows: "In the case of any [judge ... who has resigned the judicial office ... with the continued right during the remainder of his lifetime to receive the salary of the office at the time of his resignation] who retires on an immediate annuity...." *See* 5

---

(3) Notwithstanding paragraph (c)(1) of this section, a justice or judge of the United States as defined by section 8701(a)(5) of this title who resigns his office without meeting the requirements of section 371(a) of title 28, United States Code, for continuation of the judicial salary shall have the right to convert regular optional life insurance coverage issued under this section during his judicial service to an individual policy of life insurance under the same conditions approved by the Office governing conversion of basic life insurance coverage for employees eligible as provided in section 8706(a) of this title.

**4.** Such judges otherwise are known as § 8701(a)(5)(iii) or retired "rule of 80" judges.

**5.** Section 8701(a)(5)(iii), in referring to retired "rule of 80" judges, describes them as judges who have *"resigned* the judicial office under section 371(a) of title 28 with the continued right during the remainder of [their] lifetime to receive the salary of the office at the time of [their] resignation" (emphasis ours). Section 371 of title 28, however, uses the term "retire." Because Congress interchanges the words "resign" and "retire" with respect to judges who, after satisfying the "rule of 80," have left the Bench, so, too, will this Court.

U.S.C. § 8714a(c)(2)(A), reprinted *supra* note 3. Plaintiff believes instead that Congress intended to exempt retired "rule of 80" judges from any insurance coverage reduction to which other federal employees might be subject. In fact, plaintiff posits that Congress' intent was to permit "rule of 80" judges to keep their FEGLI coverage, in full force and effect and without diminution.

Defendants obviously maintain a contrary position. In their view, the definitions in 5 U.S.C. § 8701 merely set forth who is eligible for coverage, a fact distinct from the breadth of that coverage. They state that the distinctions drawn in 28 U.S.C. § 371 between active, senior, and retired judges, rather than the definition of "employee" in section 8701(a), govern how judges shall be treated for FEGLI purposes. Defendants observe that retired judges are separated from service; they urge that retired judges no longer serving the judicial branch ought not to receive the same coverage that active and senior judges do, especially given their option to join law firms where they likely will be compensated generously for their experience on the Bench.[6] Defendants are impressed by Congress' provision allowing judges who resign, but do not qualify for "rule of 80" status, the option to convert their standard and optional life insurance to individual policies.[7] Defendants reason that Congress knew to amend the coverage rather than the definitional provisions to afford these non-"rule of 80" judges the aforementioned opportunity, and, if it had so intended, could have amended the coverage provisions to afford retired "rule of 80" judges the benefit to which plaintiff lays claim.

Upon consideration, the Court finds plaintiff's interpretation to carry the day. When Congress defined an "employee" for FEGLI purposes, it included judges who retired under the "rule of 80." A judge that has retired from the Bench cannot retire again; therefore, we do not believe that Congress intended for retired "rule of 80" judges to suffer a change in their insurance coverage. And, although perhaps superfluous to our ruling, we think that strong policy reasons may have underwritten Congress' action in favoring retired "rule of 80" judges over other retired federal employees. The act of retirement removes an individual from Article III status, but not from other indicia of unique federal service. At the onset, judges accept life appointments. Also, they often accept their appointment during the prime of their legal career and forego much higher salaries for the privilege of serving on the judiciary. The earliest that "rule of 80" retirement accrues is at age sixty-five and after fifteen years of service. At the risk of sounding self-serving, the Court seriously doubts that Congress considers "rule of 80" retirees to be cheating the United States Government by permitting maintenance of their insurance coverage after leaving the Bench. Furthermore, and with all due respect to my colleagues who have proceeded otherwise, many "rule of 80" eligibles may opt to retire completely not only from the Bench, but also from the legal profession. Without a doubt, years of managing heavy dockets take their toll. For these judges, there is no lucrative law firm salary in the offing to compensate them for the loss of their insurance coverage. Finally, Congress may have realized that continued coverage allows judges to retire from the Bench rather than take senior status. At least one dollar advantage accrues to the United States Government in affording judges qualifying under the "rule of 80" that choice: neither law clerks nor support staff need be provided to retired "rule of 80" judges. In sum, we can identify ample reasons why Congress acted as we believe it did.

The Court notes that we are not the only ones who interpreted the amendment to

---

6. Defendants cite no legislative history to suggest that their "bright future" argument was a concern of the legislators, but proffer their theory as a policy consideration only.

7. *See, e.g.,* 5 U.S.C. § 8714a(c)(2)(C), reprinted *supra* note 3.

read that retired "rule of 80" judges would not be subject to a reduction in FEGLI coverage like other retired federal employees. We already mentioned the letter authored by the Administrative Office's General Counsel on which plaintiff allegedly relied in reaching his decision to retire (*see* doc. 1, exh. B).[8] Said General Counsel repeated his belief as to the correct interpretation to the Associate Director for Compensation of the Office of Personnel Management (OPM) (*see* doc. 1, exh. D). Plaintiff apparently has uncovered other correspondence to this effect. For example, a letter from the Director of the OPM to the Director of the Office of Management and Budget voiced the following concern:

> However, the Office of Personnel Management strongly objects to including in the definition of "employee" for FEGLI purposes a judge who has resigned his office with the right to salary continuation. Such an individual is deemed to be an employee *retired* under a civilian retirement system for Federal employees. Therefore, he is treated like any other retired employee under the FEGLI program. If he has had FEGLI coverage for the 5 years of service immediately preceding retirement or, if less than 5 years, since his first opportunity to enroll, a retired employee may continue his FEGLI coverage after retirement, but his coverage begins to reduce at age 65. *If retired judges were defined as "employees" under the FEGLI law, their coverage would never reduce.* The Office of Personnel Management opposes offering FEGLI to retired judges on more favorable terms than to retired employees generally. (Emphasis ours.)

(*See* doc. 1, exh. C), We highlight these communications not under the guise of legislative history, because we tend to agree with defendants that they are not, but as a confirmation, of sorts, of the meaning imparted by the words that eventually were made law by the Congress. That the OPM subsequently reversed itself (*see* doc. 1, exhs. E, G) bespeaks an unsurprising political reaction and does not render the earlier letters useless for the limited purpose we have described.

Both sides have devoted considerable effort to pinpointing legislative history and other correspondence favorable to their cause. Our ruling today indicates that, while we read the FEGLI configuration to be a bit curious, we do not consider it ambiguous and thus in need of clarification provided by whatever legislative history can be discovered.[9] To be sure, Congress' effort was awkward, but given the equivocal—and often partisan—nature of legislative history in general, we take solace in knowing that the "plain meaning" canon of statutory construction, applicable here, still prevails in the first instance.

Our colleague sitting in the District of Colorado, Judge West, in deciding this very issue, also has ruled in favor of a retired "rule of 80" judge, but in doing so he did find it necessary to consult with and rely on more than the statute itself. *See Winner v. Cornelius*, No. CIV–85 L.W. 1103 (D.Colo. July 22, 1985) (doc. 14 app.).

Private correspondence again figures into our discussion. Judge West relied on three letters and a declaration to elucidate "everyone's belief prior to the enactment as well as the AO's and Congress' belief

---

8. For the record, we indicate again that our ruling in plaintiff's favor is in no way based on an estoppel theory.

9. We comment here that the legislative history brought to light by defendants strikes us as less than persuasive. Frankly, it appears to us that Senator Thurmond, in referencing "amendments to sections 8701(a), 8714a(c), and 8714b(c)" was referring to judges who leave the Bench before qualifying under the "rule of 80." He does refer to judges who "retire or resign

completely," but one wonders if he was using those terms interchangeably given that the amendments to §§ 8714a(c) and 8714b(c) only added provisions concerning those judges who leave before qualifying under the "rule of 80." It is these judges who plainly have an option to convert their coverage to individual policies. We observe that Judge West in *Winner v. Cornelius*, No. CIV–85 L.W. 1103 (D.Colo. July 22, 1985) also did not find this excerpt persuasive. *See* doc. 14 app.

after the legislation passed that the amendment would and did have the effect of providing coverage, without diminution, to judges who resigned under Section 371(a)." *See* doc. 14 app. at 13–14. In *Winner* and in the instant case defendants objected to use of these documents as indicators of Congress' intent. Judge West disagreed and found the papers to be "properly before [him] for all purposes." *Id.* at 11. We need not make a similar ruling, but remark that, having read their contents and their unfavorable tenor, we are not surprised at defendants' objections. The first letter, dated December 1982, is one written from Charles E. Simons, Jr., Chief Judge for the United States District Court of South Carolina to then-Judge Winner. In it, Judge Simons relates that he had delivered a proposed amendment[10]—the present language of section 8701(a)(5)— that would allow retired "rule of 80" judges to keep their insurance. A second letter reflects an exchange between Strom Thurmond, United States Senator from South Carolina and Chairman of the Committee on the Judiciary and Judge Simons in which the former relates that the purpose of the amendment was to permit retired "rule of 80" judges "to continue their life insurance after their retirement, without diminution" and that he would endeavor to persuade the OPM to return to its original interpretation that set retired "rule of 80" judges apart from other retired federal employees. Judge Simons submitted a declaration in the *Winner* case authenticating and elaborating upon these written conversations. The third letter is one from Charles E. Wiggins, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, in which he expresses disappointment over the OPM's current position, particularly in light of his close work with the Administrative Office's staff to phrase an amendment that would accommodate the judiciary's goal.

We detail the above correspondence only to advise the parties that we appreciate their efforts in trying to assist the Court in its ruling. As heretofore mentioned, however, we have no qualms in deciding this matter based on a simple reading. It would be absurd to assume that Congress would expect already retired judges to retire again. Congress, whatever its reasons, conferred on retired "rule of 80" judges the privilege of maintaining their life insurance coverage without diminution. Accordingly, summary judgment on this issue is granted in favor of plaintiff.

SO ORDERED.

---

10. Were we basing our Opinion on this correspondence, the fact that Judge Simons delivered a copy of the proposed amendment to Senator Thurmond's aide rather than to the Senator himself, as defendants tried to persuade at oral argument, would be of no moment to us.