SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

TOWERS FINANCIAL CORPORATION, et al., Defendants.

No. 93 Civ. 0744 (WK) (AJP).

United States District Court, S.D. New York.

Jan. 22, 1997.

Dorothy Heyl, Securities and Exchange Com'n, New York City, for plaintiff.

William B. Fleming, White Plains, NY, for defendants.

## OPINION AND ORDER

PECK, United States Magistrate Judge:

The issue before the Court is whether the SEC's action against defendant Mitchell Brater is automatically stayed by his filing for bankruptcy protection. For the reasons set forth below, the Court holds that the SEC's action is exempted by 11 U.S.C. § 362(b)(4) from the automatic stay provided by section 362(a)(1) of the Bankruptcy Code.

## FACTS

The SEC's action against Towers and various of its officers and directors is one of several actions arising from the alleged "Ponzi scheme" involving the Notes and Bonds of Towers Financial Corporation and its subsidiaries, more fully described in several prior opinions of this Court, familiarity with which is assumed.[1]

The SEC filed this lawsuit against defendant Brater (and others) in February 1993, amending its complaint on March 3, 1993. "The Complaint alleges that Defendant Brater participated in a massive fraud that victimized thousands of investors beginning in at least 1988. According to the Complaint, Defendant Brater was vice chairman of the board of Towers Financial Corporation ('Towers'), and had responsibility for marketing Towers promissory notes ('Notes') through a nationwide network of broker-dealers.... The Commission alleged that Defendant Brater violated the registration and anti-fraud provisions of the federal securities laws through his actions at Towers, and that he knew, or was reckless in not knowing, of the falsity of representations made to purchasers of the Notes." (Declaration of SEC senior attorney Dorothy Heyl, dated 11/1/96, ¶ 3.) The SEC's complaint seeks, *inter alia*, injunctive relief and disgorgement from Brater. (*See* 12/10/96 Hearing Tr. at 11–12.)

Defendant Brater's answer denies the SEC's allegations. (*See* Heyl Decl. ¶ 4.) During discovery, Brater asserted his Fifth Amendment privilege. (Heyl Decl. ¶¶ 6–9 & Exs. 1–2.) The discovery period in this case has concluded. (Heyl Decl. ¶ 12.) The SEC moved to preclude Brater from testifying or presenting evidence at trial. In response, Brater contended, *inter alia*, that this action is automatically stayed by virtue of § 362(a) of the Bankruptcy Code, because he filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 10, 1996. (Brater Br. at 9.)[2]

## ANALYSIS

The Bankruptcy Code provides an automatic stay of litigation against the debtor:

### § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, adminis-

---

1. *See, e.g., Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635 (S.D.N.Y.1996); *LaSalle National Bank v. Duff & Phelps Credit Rating Co.*, 951 F.Supp. 1071 (S.D.N.Y.1996); *In re Towers Financial Corp. Noteholders Litig.*, 93 Civ. 0810, 1996 WL 393579 (S.D.N.Y. July 15, 1996); *SEC v. Towers Financial Corp.*, 93 Civ. 0744, 1996 WL 288176 (S.D.N.Y. May 31, 1996); *SEC v. Towers*, 93 Civ. 0744, 1996 WL 406685 (S.D.N.Y. March 26, 1996); *Shain v. Duff & Phelps Credit Rating Co.*, 915 F.Supp. 575 (S.D.N.Y.1996); *In re Towers*, 93 Civ. 0810, 1995 WL 571888 (S.D.N.Y. Sept. 20, 1995), *aff'd*, 936 F.Supp. 126 (S.D.N.Y.1996).

2. The Court notes that Brater did not bring that filing to the Court's attention, nor argue for the automatic stay, until responding to the SEC's motion to preclude Brater from testifying or offering evidence in defense at trial (based on his assertion of his Fifth Amendment rights during discovery). Indeed, Brater's counsel attended a status conference and agreed to the briefing schedule on the preclusion motion after his client had filed for bankruptcy, without raising the automatic stay issue. (*See* 12/10/96 Hearing Tr. at 20–21.)

trative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ...

11 U.S.C. § 362(a)(1). The Bankruptcy Code exempts from that automatic stay, however, actions "by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4).

The legislative history of the 1990 amendment to § 362 sheds additional light on the government exemption from the automatic stay:

> Section 362(b)(4) indicates that the stay under section 362(a)(1) does not apply to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

11 U.S.C.A. § 362 Historical and Statutory Notes, 1990 Acts, at pp. 62–63.

Defendant Brater argues that the government exemption from the automatic stay is not applicable because Brater is in no position to continue to violate the securities laws and thus the SEC essentially is seeking pecuniary benefit only:

> [N]o public policy will be served by further prosecution of this case since no conduct violative of the securities laws (or, more broadly, affecting public safety) can be effectuated. Over three years have passed since the SEC first filed a complaint against Brater, and, in that interim period, Brater is no longer employed by or connected with Towers or the THRFC Bond Funds in any way, Steven Hoffenberg has been and continues to be incarcerated, and Arthur Ferro is likewise not in any position to effectuate the violations alleged by the SEC in its original charges. Since Brater no longer has the capacity to ac-

complish the alleged ongoing conduct which the SEC originally sought to enjoin and prevent, we respectfully re-submit that the SEC's interest in prosecuting this case is pecuniary and not related to vindicating public safety. Under the required "narrow construction" of section 362(b)(4), the instant action—in which the SEC seeks an order fixing the pecuniary relief of disgorgement, pre-judgment interest, and civil penalties in addition to a permanent injunction and officer-and-director bar—does not qualify for an exemption from the bankruptcy stay and should be stayed.

(Letter from Brater's counsel, William B. Fleming, dated 12/13/96, at 2; *see also* 12/10/96 Tr. at 17; Brater Br. at 10.)

While there is a paucity of cases interpreting § 362(b)(4) with respect to SEC actions, the few cases that do exist support the SEC. In *Bilzerian v. SEC*, 146 B.R. 871 (Bankr. M.D.Fla.1992), the SEC filed an action for injunctive relief and disgorgement in 1989. On April 18, 1991, the court entered partial summary judgment for the SEC and enjoined Bilzerian from continuing to violate the securities laws. In late 1991, Bilzerian filed for bankruptcy protection. 146 B.R. at 872. Bilzerian sought to enjoin the SEC " 'from further pursuit of monetary damages' " based on the Bankruptcy Code's automatic stay provision. 146 B.R. at 872.

The SEC in *Bilzerian* argued (as does the SEC here) that "its pursuit ... of its equitable remedy of disgorgement is to enforce the Government's police or regulatory powers and therefore is exempt from the provisions of 11 U.S.C. § 362(a) by virtue of 11 U.S.C. § 362(b)(4)." 146 B.R. at 872. The *Bilzerian* court agreed with the SEC, explaining:

> [T]he SEC's action against the Debtor is not to pursue restitution for the Government, but is instead to prevent those such as the Debtor from repeatedly violating the securities laws. This type of action is within the scope of § 362(b)(4).

The legislative history of § 362 states:

> "Where a governmental unit is suing a debtor to prevent or stop violation of fraud, ... or similar police or regulatory

laws, or attempting to fix damages for violation of such law, the action or proceedings is not stayed under the automatic stay."

S.Rep. No. 95–989 at 52, reprinted in 1978 U.S.Code Cong. and Admin.News at 5787, 5838.

As stated by the Ninth Circuit Court of Appeals, the policy behind § 362(b)(4) is "to prevent the bankruptcy court from becoming a haven for wrongdoers." Citing *SEC v. Elmas Trading Corporation,* 620 F.Supp. 231, 240 (D.Nev.1985), *aff'd,* 805 F.2d 1039 (9th Cir.1986) (quoting *Commodity Futures Trading Commission v. Co Petro Marketing,* 700 F.2d 1279, 1283 (9th Cir.1983)). In sum, this Court is satisfied that in this instance, disgorgement is a remedy sought by the SEC in furtherance of its police powers under the Securities Laws. As stated by the Second Circuit Court of Appeals:

"The effective enforcement of the securities laws requires that the SEC be able to make violations unprofitable. The deterrent effect of an SEC enforcement action would be greatly undermined if securities laws violators were not required to disgorge illicit profits." *Securities & Exchange Commission v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2nd Cir.1971).

While there is no question that the automatic stay provisions prevent the SEC from attempting to enforce any disgorgement award, this Court is satisfied that the mere fixing of the award is well within the provisions of 11 U.S.C. § 362(b)(4).

*Bilzerian v. SEC,* 146 B.R. at 873.

Thus, in *Bilzerian* the debtor was in no position to continue to violate the securities laws—in fact, he was permanently enjoined from doing so. Nevertheless, the Court found the SEC action exempt from the automatic bankruptcy stay. In contrast, Brater is not so enjoined, making the government exemption even more applicable.

*Bilzerian* has been followed in this District. *See In re Wolf Financial Group Inc.,*

94 B 44009/44010, slip op. (Bankr.S.D.N.Y. Dec. 15, 1994) (Bankruptcy Judge James L. Garrity, Jr.)[3] In *Wolf,* the debtors sought to stay, *inter alia,* certain SEC and New Jersey Bureau of Securities ("NJBS") actions. Judge Garrity began by explaining the "pecuniary purpose and public policy tests" used by the courts to determine if the § 362(b)(4) exemption applies:

To determine whether a particular action falls within the police power exception to the stay, courts apply the pecuniary purpose and public policy tests. *See, e.g., N.L.R.B. v. Continental Hagen Corp.,* 932 F.2d 828, 833–34 (9th Cir.1991); *Word v. Commerce Oil Co. (In re Commerce Oil Co.),* 847 F.2d 291, 295 (6th Cir.1988); *United States v. Seitles,* 106 B.R. [36,] at 38–39 [S.D.N.Y.1989]. The pecuniary purpose test focuses on whether the governmental action "relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters relating to public safety." *In re Commerce Oil Co.,* 847 F.2d at 295. "Those proceedings that relate primarily to matters of public safety are excepted from the stay." *Id.* Under the public policy test, a court must determine whether the proceedings seek to effectuate public policy, or merely are being brought to adjudicate private rights. *Id.* "Those proceedings that effectuate a public policy are excepted from the stay." *Id.*

*Wolf,* slip op. at 25–26.

As does Brater, the debtor in *Wolf* argued that the SEC action essentially was one "to collect money damages for the benefit of investors" and served no "continuing regulatory function because debtors have withdrawn from the securities industry." *Wolf,* slip op. at 29. Judge Garrity rejected these arguments: "Here, the underlying actions are predicated on the SEC's and NJBS's statutory authority to seek injunctive relief in furtherance of their police and regulatory powers.... The central purpose of the SEC actions is to protect the public by ensuring fair dealing in the securities markets." *Wolf,* slip op. at 29–30.

---

3. While *Wolf* is unpublished, Judge Garrity utilized the same analysis in *Ngan Gung Restaurant,*

*Inc. v. People of the State of New York,* 183 B.R. 689 (Bankr.S.D.N.Y.1995).

Judge Garrity found disgorgement to be ancillary to the SEC's request for injunctive relief and important to the public policy goals of the securities laws:

The disgorgement sought by the SEC is an equitable remedy that is "uniquely suited to redress or cancel unfairness and promote investor confidence in securities transactions." *SEC v. World Gambling Corp.*, 555 F.Supp. 930, 934 (S.D.N.Y.1983) (citations omitted), *aff'd without op.*, 742 F.2d 1440 (2d Cir.1983). It is merely ancillary to the SEC's scheme of injunctive remedies and is designed to make securities fraud unprofitable. *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir.1972).... Moreover, the public policy goals of the enforcement actions will be undermined if we issue a stay. "The need to continue the deterrent actions, despite the pendency of the bankruptcy action, furthers the purpose of the regulatory exemption to the automatic stay squarely: to avoid frustrating 'necessary governmental functions by seeking refuge in bankruptcy court'". *City of New York v. Exxon*, 932 F.2d 1020, 1024 (2d Cir.1991) (citing *United States v. Seitles*, 106 B.R. 36, 38 (S.D.N.Y.1989), *vacated on other grounds*, 742 F.Supp. 1275 (S.D.N.Y.1990)). The SEC and the NJBS actions are excepted from the automatic stay pursuant to §§ 362(b)(4) and (5).

*Wolf*, slip op. at 31–32. *See also Board of Governors of Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 39–40, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991) (Federal Reserve administrative proceeding not stayed, since "the Board's actions also fall squarely within § 362(b)(4)"); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir.1991) ("We therefore hold that governmental actions under CERCLA to recover costs expended in response to completed environmental violations are not stayed by the violator's filing for bankruptcy."); *Commodity Futures Trading Commission v. Incomco, Inc.*, 649 F.2d 128, 133 (2d Cir.1981) (CFTC action for declaratory and injunctive relief not stayed by bankruptcy); *SEC v. First Financial Group of Texas*, 645 F.2d 429, 437–38 (5th Cir.1981) (SEC action exempt from the automatic stay); *Ngan Gung Restaurant, Inc. v. People of the State of New York*, 183 B.R. 689, 691–94 (S.D.N.Y. 1995) (action by New York to enjoin debtor from violating minimum wage laws and to pay restitution to debtor's employees is not stayed under *Wolf* analysis); *Arizona Corp. Commission v. Knoell*, 160 B.R. 825, 826 (D.Ariz.1993) (§ 362(b)(4) exemption applies to Arizona Corporation Commission's investigation of possible securities law violations); *United States v. Mattiace Indus., Inc.*, 73 B.R. 816, 819–20 (E.D.N.Y.1987) ("government actions under CERCLA, whether for injunctive relief or for recovering costs, damages, and penalties, are brought pursuant to a statute that was clearly enacted to protect the health, safety, and welfare of the public," and hence is not stayed); *SEC v. Elmas Trading Corp.*, 620 F.Supp. 231, 240–41 (D.Nev.1985) (SEC action exempt from automatic stay), *aff'd mem.*, 805 F.2d 1039 (9th Cir.1986).

■ The Court is persuaded by *Bilzerian, Wolf* and the other cases cited above. As Congress made clear, " 'where a government unit is suing a debtor to prevent or stop violation of fraud, ... or similar police or regulatory laws, *or attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay.' " *Bilzerian,* 146 B.R. at 873 (quoting the Senate Report) (emphasis added). Even if the SEC only were seeking disgorgement, therefore, the action would *not* be stayed. Here, of course, the SEC also is seeking injunctive relief to prevent Brater from future violations of the securities laws. The SEC's action is not stayed.

## CONCLUSION

For the reasons set forth above, 11 U.S.C. § 362(b)(4) exempts the SEC's action against Brater from the automatic bankruptcy stay of § 362(a)(1).

## SERVICE

Ms. Heyl is to serve this Opinion and Order on all counsel of record and unrepresented parties in this action, and on liaison

counsel and the Trustee's counsel in *In re Towers.*

SO ORDERED.