**Alison Anne SELLIN and Daniel Kampel, Plaintiffs,**

v.

**Rx PLUS, INC., Medi–Rx America, Inc, Sidney M. Karabel, Gary Takata, Ronald M. Urvater, Rajan K. Pillai and Pillai, Brick & Roseman, Defendants.**

No. 88 Civ. 3482 (PKL).

United States District Court,
S.D. New York.

Feb. 26, 1990.

Rogovin Golub Bernstein & Wexler, New York City (Harold J. Pokel, of counsel), for plaintiffs.

Jackson & Nash, New York City (Christopher S. Rooney, Lisa S. Tankoos, of counsel), for defendants Rajan K. Pillai and Pillai, Brick & Roseman.

LEISURE, District Judge.

This is a securities fraud action under Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l. Defendants Rajan K. Pillai and Pillai, Brick & Roseman have moved for summary judgment on all claims against them in this action.

## BACKGROUND

This case arises out of a stock offering by defendant Rx Plus, Inc. ("Rx Plus"), a subsidiary of defendant Medi–Rx America, Inc. ("Medi–Rx"). Medi–Rx is a Delaware corporation in the business of offering prescribed medications and medical equipment by mail order. Rx Plus is a Delaware corporation whose corporate purpose is to establish a chain of retail pharmacies. De-

fendants Sidney Karabel, Gary Takata, and Ronald Urvater are all members of the Board of Directors of Medi–Rx and also comprise the Board of Directors of Rx Plus.

In early 1987, Rx Plus provided to plaintiffs, through a confidential private placement memorandum, an opportunity to purchase stock in the company. The stock was allegedly available for sale through the members of the Rx Plus Board of Directors. Plaintiff Alison Sellin bought $60,000 worth of stock, and plaintiff Daniel Kampel purchased $15,000 worth of stock. The private placement memorandum on which these sales were based allegedly failed to meet the disclosure requirements of federal securities laws or the regulations of the Securities and Exchange Commission. In September 1987, Rx Plus admitted that the private placement memorandum might not have met all the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77*l*. Accordingly, Rx Plus agreed to allow buyers of the stock offered under the possibly offending placement memorandum to rescind their purchases. Both plaintiffs accepted Rx Plus's offer. However, both allege that they have never received a refund from Rx Plus for the purchase price.

Plaintiffs aver that defendants Rx Plus, Medi–Rx, and the members of the Rx Plus Board intentionally released an insufficient placement memorandum. Plaintiffs claim that the money raised through the stock offering was not intended to fund start up costs of Rx Plus's retail chain, but was in fact intended to fund the substantial debt incurred by Medi–Rx due to recent operating losses.

The allegedly deficient placement memorandum was drafted by defendant law firm Pillai, Brick & Roseman, of which defendant Rajan K. Pillai ("Pillai") is a partner. Plaintiffs allege that Pillai and his firm knew or should have known of the insufficient and fraudulent nature of the placement memorandum, and were also aware of Rx Plus's purposes in releasing such a misleading memorandum. Further, plaintiffs allege that Pillai and his firm may have been directly involved in the marketing of the improperly issued stock.

This action was filed on May 18, 1988. Defendant Pillai and his firm have now moved for summary judgment on all claims against them.

## DISCUSSION

Defendants Pillai, Brick & Roseman and Rajan K. Pillai have moved for relief under Fed.R.Civ.P. 56. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[A] motion for summary judgment should be granted only "when, viewing the record in the light most favorable to the non-moving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." ' " *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1559 (2d Cir.1989), *quoting Pension Benefit Guaranty Corp. v. LTV Corp.,* 875 F.2d 1008, 1015 (2d Cir.1989), *quoting Cinema North Corp. v. Plaza at Latham Associates,* 867 F.2d 135, 138 (2d Cir.1989).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must then determine whether there does indeed exist a genuine issue as to any material fact: "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v.*

*Unilever N.V.,* 867 F.2d 102 (2d Cir.), *cert. denied sub nom. Lipton v. R.C. Bigelow, Inc.,* —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *quoting* Fed.R.Civ.P. 56(c). *See also Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506 (2d Cir.1989). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim. Rather, "the motion may, and should, be granted so long as what is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party," *id.*—the non-moving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that par-

ty.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact, but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), *citing Anderson, supra,* 477 U.S. at 247–50, 106 S.Ct. at 2509–11.

In this case, the central issue is whether a law firm which prepared a private placement memorandum used in allegedly fraudulent sales of securities can be held liable under Section 12 of the Securities Act of 1933. Until recently, it was unclear whether persons not directly involved in the sale of the securities at issue could be held so liable.

The Supreme Court addressed this issue in 1988. In *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Court held that a person must solicit a purchase of securities, motivated by prospect of his own gain or by the prospective gain of the security owner to qualify as a seller under § 12(1).[1] The Court undertook a thorough analysis of the language and history of the statute and determined that liability under § 12(1) could only be im-

---

1. Section 12(1) provides:
   Any person who (1) offers or sells a security in violation of section [5] ... shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recov-

er the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

posed on actual sellers of securities and on those who actively solicited sales of such securities with the goal of personal gain or gain for the issuer. A person who solicited sales solely for the benefit of the buyer, or a party involved in the preparation of the securities issuance, but not involved in sales or solicitation, cannot be held liable under the statute. 108 S.Ct. at 2081–83.

The Supreme Court, in reaching its decision in *Pinter*, recognized that the language of §§ 12(1) and 12(2) were almost identical, but declined to decide whether the definition of a seller for the purposes of § 12(1) also applied to § 12(2). 108 S.Ct. at 2076 n. 20. The Second Circuit, soon after the *Pinter* decision was issued, addressed the question of the definition of a seller in § 12(2). "Although the Supreme Court did not 'take a position on' the scope of a 'seller' for the purposes of section 12(2), we previously have held that the language of sections 12(1) and 12(2) is identical in meaning, *Schillner v. H. Vaughan Clarke & Co.*, 134 F.2d 875 (2d Cir.1943). Accordingly, we shall consider plaintiffs' section 12(2) claim in light of *Pinter*." *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir.1988).

Recently, the Second Circuit addressed a situation almost on all fours with the facts now before this Court. In *Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124 (2d Cir.1989), the plaintiff was suing, among others, the law firm which had prepared the offering materials of the securities offering at issue. In addition to preparing those materials, which included an allegedly misleading private placement memorandum, the law firm sent the offering package to the plaintiff with a cover letter on the law firm's stationery stating that the materials were being sent at the request of the defendant issuer's officers.

The Court again carefully reviewed the *Pinter* opinion and determined that the def-

inition of "seller" in *Pinter* also applied to claims under § 12(2). The Court found that, after *Pinter*, liability under § 12 cannot be extended to those who had only a collateral role in the preparation of the securities issue. To be held liable under § 12, a person must have been involved in the actual solicitation of sales, and have done so with the express motive of making a profit from any successful sales. In the case before it, the Court noted, "[T]he firm's participation in the sale consisted solely of the ministerial act of mailing a copy of the private placement memorandum.... That cannot under any view be considered the kind of solicitation necessary under *Pinter*. It is clear from the Court's opinion that its concern had to do with persons such as brokers who might act on the seller's behalf for a profit. Moreover, *Pinter* expressly cautioned that the draconian provisions of Section 12 must not be extended to lawyers ... who have performed only their usual professional functions in preparing documents for an offering." *Wilson, supra*, 872 F.2d at 1126. *See also, Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016–17 (2d Cir.1989).

In the case before this Court, plaintiffs attempt to avoid the impact of *Pinter* and *Wilson* by alleging that there exist questions of fact as to whether Pillai and his firm did more than simply prepare offering papers for Rx Plus. In particular, plaintiffs assert that there exist questions of fact as to whether Pillai and his firm knew that the placement memorandum was materially misleading and in violation of § 5, whether Pillai and his firm prepared these misleading papers with the intent of making a profit, and whether Pillai and his firm were involved in the solicitation of sales of the Rx Plus securities.[2]

2. Plaintiffs also attempt to undermine the clear impact of the *Pinter* and *Wilson* opinions on the legal standing of this case. However, the only decision plaintiffs can point to in support of their position is Judge Timbers' dissent in *Wilson*. Regardless of the logic and forcefulness of Judge Timbers' opinion, it is elemental that a dissent is not law. This Court is bound to follow the law of this Circuit, and that law is delineated in Judge Winter's majority opinion in *Wilson*. Thus, plaintiffs' legal argument that defendant Pillai and his firm should be held liable under § 12(2) regardless of their role in the solicitation of sales of the Rx Plus securities must be rejected.

Plaintiffs are correct that at least the question of the involvement of defendant Pillai and his firm in the solicitation of plaintiffs' purchase of the Rx Plus stock would be a legitimate issue going to the merits which could, if properly demonstrated, avoid summary judgment. It is incumbent on the non-moving party, however, to provide some evidence indicating the existence of a genuine issue of fact. Defendants have provided the Court with an affidavit from Pillai and also testimony from the deposition of Neil Sellin indicating that Pillai and his firm had no role in the solicitation of plaintiff purchasers. This is sufficient prima facie evidence of the lack of liability on the part of the defendants now before the Court. Where a party moving for summary judgment makes such a showing, the burden shifts to the non-moving party. "[T]he nonmoving party must offer ' "concrete evidence from which a reasonable juror could return a verdict in his favor." ' " *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063 (2d Cir.1989), *quoting Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988), *quoting Anderson, supra,* 477 U.S. at 256, 106 S.Ct. at 2514. "In opposing a motion [for summary judgment], a party may not rest upon mere conclusory allegations or denials. Rather, it is incumbent upon a defending party to set forth 'supporting arguments or facts in opposition to the motion.' " *Eastway Construction Corp. v. The City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *quoting SEC v. Research Automation Corp.*, 585 F.2d 31, 31 (2d Cir.1978).

Plaintiffs have done no more than assert that questions of fact exist. The only affidavit provided is from plaintiffs' counsel, and plaintiffs provide only one exhibit going to the merits of the case.[3] That exhibit, a copy of the recision offer from Rx Plus, in no way links defendants Pillai and his firm to the solicitation of plaintiffs to purchase the Rx Plus stock. Indeed, most of plaintiffs' counsel's affidavit is dedicated to arguing that more discovery might show the existence of questions of fact, and why therefore defendants' motion should be denied to allow such discovery.

Such unfounded conclusory allegations are not sufficient to defeat a motion for summary judgment, particularly in this case. This case is almost two years old. Over eighteen months passed between the filing of this action and the bringing of the instant motion. In that time plaintiffs failed to take the deposition of defendant Pillai or of any other member of the Pillai law firm. Plaintiffs' counsel alleges that this discovery failure is due to defendants' counsel's failure to take the depositions of plaintiffs, which were originally scheduled to occur prior to that of Pillai. This position is untenable. This Court, by plaintiff's counsel's own admission, twice urged defendants to delay bringing the instant motion in order to allow plaintiffs' counsel to review the law governing the case and to conduct sufficient discovery. Ample time was allowed between the filing of defendants' papers in this motion and plaintiffs' response date to allow for further discovery, if such was deemed necessary by plaintiffs' counsel. Apparently no such discovery was conducted, and the Court did not, while this motion was pending, receive any request from plaintiffs' counsel to adjourn the motion to allow for additional discovery. Plaintiffs cannot now turn and blame defendants for their failure to conduct sufficient discovery to defeat this motion, even assuming such discovery exists. Plaintiffs bear the burden of proof in almost all actions at law and in equity. That burden extends to producing sufficient evi-

---

3. The Court can only give limited weight to plaintiff's counsel's affidavit. "An affidavit of the opposing party's attorney which does not contain specific facts or is not based on firsthand knowledge is not entitled to any weight." *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983). Simple assertions by counsel that there are facts in the case that should defeat summary judgment are, by their nature, conclu-sory and do not meet plaintiffs' burden in the face of a motion for summary judgment. *See Rosenberg v. Silver*, 762 F.2d 255, 256 (2d Cir. 1985). A hearsay affidavit is not a substitute for the personal knowledge of a party. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988); *Chandler v. Coughlin*, 763 F.2d 110, 113–14 (2d Cir.1985); *United States v. Bosurgi*, 530 F.2d 1105, 1111–12 (2d Cir.1976).

dence to support their case. This burden has simply not been met in this case.

The fact is that plaintiffs have failed to place before the Court any material evidence that, given the rulings in *Pinter* and *Wilson,* would allow any reasonable jury to find for plaintiffs against defendants Pillai and Pillai, Brick & Roseman. Those defendants, meanwhile, have produced affidavits and other evidence indicating that they had no involvement in the transactions at issue that would lead to liability under the applicable statute. Accordingly, summary judgment must be granted for those defendants.

█ Defendants have also moved for sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. This is a close case for sanctions. Plaintiffs have clearly failed to litigate this case aggressively. The fact that almost two years after filing the complaint, only one major deposition has been taken, and that one by defense counsel, speaks ill of plaintiffs' and plaintiffs' counsel's attention to this matter. There is also evidence that plaintiffs' counsel failed to communicate with defendants' counsel for long periods of time during the pendency of the litigation. Such failure to communicate with opposing counsel, if true, demonstrates a lack of professionalism and inexcusable neglect of responsibilities. Moreover, the Court is disturbed by plaintiffs' continuation of this action against Pillai and his firm in light of such clear legal precedents against finding liability in such situations.

There is no doubt that a district court, faced with such evidence of dilatory practices and neglect of professional responsibility could, in its discretion, sanction counsel or his clients. This Court, however, is unwilling to impose sanctions at this time against plaintiffs or their counsel. First, the Court cannot find that defendants' counsel comes to the Court with entirely clean hands. While there is no doubt that plaintiffs' counsel must take primary responsibility for the extraordinary lack of progress in discovery in this case, defendants' counsel, in the zeal to extract their clients from this litigation, also failed to make a genuine effort to have discovery move apace. Second, the Court appreciates that plaintiffs' counsel might well have believed, incorrectly, that this Court might chose to reject the majority opinion in *Wilson* and chose instead to follow Judge Timbers' dissent. Thus, the Court cannot find plaintiffs' opposition to the instant motion entirely frivolous.

This is not to say in any way that the Court approves of plaintiffs' conduct of this case. There remain, after this opinion and order, two corporate and three individual defendants in this case. The Court expects plaintiffs' counsel to proceed with the prosecution of its case in an expeditious manner. Plaintiffs are put on notice that continued failures on their part or on the part of their counsel to complete discovery and prepare this case for trial expeditiously may result in the imposition of sanctions, a portion of which may be awarded retroactively to counsel for defendants now before the Court.

## CONCLUSION

The motion of defendants Rajan K. Pillai and Pillai, Brick & Roseman for summary judgment is granted. The complaint is dismissed as against those defendants.

Defendants' motion for sanctions is denied at this time.

Plaintiffs and the remaining defendants are ordered to appear for a status conference before this Court on June 22, 1990 at 2:00 pm. All discovery shall be completed by that date. Plaintiffs shall inform defendants of this schedule in writing. Failure to comply with this order may result in the imposition of sanctions or the dismissal of this action.

SO ORDERED.