In the Matter of EDWARDS MOBILE HOME SALES, INC., Debtor.

EDWARDS MOBILE HOME SALES, INC., Plaintiff,

v.

OHIO CASUALTY INSURANCE COMPANY and State of Florida Department of Highway Safety and Motor Vehicles, Division of Motor Vehicles, Defendants.

Bankruptcy No. 90–00054–8B1.
Adv. No. 90–180.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 27, 1990.

Shirley Arcuri, Kevin O'Brien, Tampa, Fla., for debtor/plaintiff.

Michael Alderman, Tallahassee, Fla., for Dept. of Highway Safety.

Ralph Leemis, Orlando, Fla., for Ohio Cas. Ins.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THE MATTER under consideration is a Complaint filed by Edwards Mobile Home Sales, Inc. (Debtor) seeking a permanent injunction and enforcement of the automatic stay provision of Section 362 of the Bankruptcy Code against Ohio Casualty Insurance Company (Ohio Casualty) and State of Florida Department of Highway Safety and Motor Vehicles, Division of Mo-

tor Vehicles (State of Florida). Debtor seeks to permanently enjoin Defendant, Ohio Casualty, from cancelling a surety bond, and Defendant, State of Florida, from revoking its mobile home sales dealer's license. In addition, Debtor seeks sanctions against Defendants for violation of the automatic stay provisions of Section 362 of the Bankruptcy Code. This Court granted a preliminary injunction on April 23, 1990, enjoining Ohio Casualty from cancelling Debtor's surety bond, and the State of Florida from revoking Debtor's mobile home dealer's license. Ohio Casualty then filed a motion to dissolve the preliminary injunction.

## STATEMENT OF FACTS

Debtor is in the retail mobile home sales business. On January 3, 1990, Debtor filed for protection under Chapter 11 of the Bankruptcy Code. Debtor continued to operate the business subsequent to the Chapter 11 filing.

As a requirement of operating its business, Debtor must have a license issued by the State of Florida Department of Highway Safety and Motor Vehicles, Division of Motor Vehicles.[1] As a condition to obtaining the required license the Debtor must possess a surety bond. Debtor currently possesses the surety bond and license as required by the State. The surety bond issued by Ohio Casualty is in effect from September 30, 1989 to September 30, 1990.

On March 26, 1990 Ohio Casualty sent a "cancellation notice"[2] of Debtor's surety bond to the State of Florida. It does not appear from the record Ohio Casualty mailed a "cancellation notice" directly to Debtor, however, Debtor was notified by the State of Florida regarding Ohio Casualty's notice. The State of Florida further advised Debtor its license would be revoked unless a replacement surety bond was secured. Without the required license Debt-

or would be unable to operate its retail mobile home sales business.

The gravamen of Debtor's complaint is Defendants, by virtue of cancelling the surety bond and revoking the license, would violate the automatic stay of Section 362. The effect of which would be to prevent Debtor from operating its business thereby making any reorganization impossible under Chapter 11. Defendants, on the other hand, contend the surety bond is a non-assumable executory contract under Section 365(c)(2) and therefore the cancellation of the bond pursuant to Section 365(e)(2) and the resulting revocation of the license would not violate the automatic stay.

## DEFENDANT OHIO CASUALTY

The Court will first address the issue of whether Ohio Casualty's surety bond as an executory contract is non-assumable under Section 365(c)(2). Section 365 generally provides a trustee (debtor in possession) may assume or reject an executory contract. Section 365(c)(2) provides an exception to the general rule. It states the trustee (debtor-in-possession) may *not* assume an executory contract if the contract is "... to make a loan, or extend other debt financing or a financial accommodation, to or for the benefit of the debtor...".

Ohio Casualty takes the position the surety bond is a financial accommodation and therefore a non-assumable executory contract. The terms of the surety bond require Ohio Casualty to pay certain liabilities of the Debtor if the Debtor failed to do so.[3] Such terms, Ohio Casualty contends, constitute a "financial accommodation" which prevent the contract from being assumable.

The Bankruptcy Code does not define the term "financial accommodation". Judge Norton in *In re Adana Mortgage Bankers,*

1. Fla.Stat. § 320.77(14) (1989).

2. The "cancellation notice" stated Ohio Casualty would consider itself released from all liability at the expiration of 30 days from receipt of the notice. Before the 30 days expired Debtor obtained a preliminary injunction preventing the

cancellation pending the outcome of the Complaint seeking a permanent injunction.

3. In fact, Ohio Casualty has paid on some claims under the surety bond prior to Debtor's bankruptcy petition being filed.

*Inc.*, 12 B.R. 977 (Bkrtcy.N.D.Ga.1980), stated "[t]he obligation to pay money on the obligation of another is a financial accommodation." In *Adana I* GNMA was financially responsible to GNMA certificate holders if the debtor failed to make payments to the certificate holders. The Court found GNMA's guaranty agreement to be a "financial accommodation" and therefore a non-assumable executory contract. Agreeing with Judge Norton's definition in *Adana I*, the Court in *In re Wegner Farms*, 49 B.R. 440 (Brktcy.N.D.Iowa, 1985), found a surety bond was a "financial accommodation". *Wegner* involved a bonding company which unilaterally terminated a grain dealer's surety bond because the grain dealer had filed bankruptcy. Like the instant case, the grain dealer was required to have a surety bond to meet the licensing requirements of the State. Without a surety bond the grain dealer would not be licensed to sell grain. The Court found the surety bond was a financial accommodation under Section 365(c)(2) because the surety was obligated to pay the grain dealer's obligations if the grain dealer failed to do so itself.

■ This Court agrees with the finding in *Wegner* and *Adana I* that an obligation to pay the debts of another is a "financial accommodation" and as such is encompassed by Section 365(c)(2). Accordingly, the Court finds the Ohio Casualty surety bond to be a financial accommodation which cannot be assumed pursuant to Section 365(c)(2).

The Court will now address the question of whether Ohio Casualty may unilaterally terminate the surety bond without first seeking relief from the automatic stay. Section 365(e)(1) generally prohibits the termination or modification of an executory contract if the reason for doing so is due to Debtor's bankruptcy. An exception is provided in Section 365(e)(2) which allows the termination based on the bankruptcy filing if the executory contract is a "financial accommodation". Having found the surety bond to be a "financial accommodation", Ohio Casualty may be permitted to terminate its surety bond in accordance with the provision allowing termination based on Debtor's bankruptcy filing. Section 365(e)(2) does not however, address the question of whether Ohio Casualty must seek relief from the automatic stay before terminating the surety bond.

Debtor takes the position Defendant cannot terminate its contract without first seeking relief from the automatic stay. *In re Computer Communications, Inc.*, 824 F.2d 725 (9th Cir.1987) involved a communication equipment manufacturer, Codex, which entered into an agreement to purchase equipment and computer software from CCI. The agreement provided, in part, a filing of bankruptcy by either party constituted default by that party and the nonfiling party may terminate the agreement based upon this default. Subsequently, CCI filed a Chapter 11 bankruptcy and Codex terminated its agreement with CCI.

The dispute between the parties was whether Codex could terminate the agreement without seeking relief from the automatic stay. The Court of Appeals, affirming the District and Bankruptcy Courts, held Codex must seek relief from the automatic stay before terminating the agreement. *Computer Communications* at 728. Codex argued Section 365(e)(2) allowed termination of the contract without relief from the automatic stay. Rejecting Codex's argument, the Court explained the automatic stay provision should be applied broadly so as to accomplish the legislative intent to protect both debtors and creditors by preventing the disorganized dismemberment of the debtor's estate. *Computer Communications* at 731.

The Court in *Wegner* addressed the issue of whether a bonding company could terminate the surety bond without first seeking relief from the automatic stay. The Court answered in the negative and found the bonding company did violate the automatic stay by its termination of the surety bond. The *Wegner* Court based its finding on the fact Section 362 provides specific exceptions to the broad scope of the automatic stay, none of which applied to the bonding company's cancellation of the surety bond. *Wegner* at 444. Further, the Court stated,

Sections 365(e) and (c) are intended to be limited and closely circumscribed exceptions to the general rule permitting a debtor to assume executory contracts and prohibiting nondebtor parties from terminating such contracts upon the filing of bankruptcy. Therefore, bringing these kinds of contracts within the ambit of the automatic stay ensures that the legal question of whether a particular contract may be terminated will be decided in the proper forum, after a full briefing by the parties rather than by a nondebtor party acting unilaterally and perhaps erroneously.

*Wegner* at 445.

■ This Court agrees with the holdings in both *Wegner* and *Computer Communications* and finds Ohio Casualty may not terminate the surety bond without first obtaining relief from the automatic stay. While Section 365(e)(2) authorizes Ohio Casualty's termination of the surety bond, it does not eliminate the requirement of obtaining relief from the stay pursuant to Section 362(d). If Section 365(e)(2) was sufficient in itself to allow the termination, then effectively it would create an exception to the automatic stay outside of those already specifically delineated in the code. The Court does not find Section 365(e)(2) exempts non-assumable executory contracts from the scope of the automatic stay.

Based on the above stated reasons the Court finds Ohio Casualty by virtue of its "cancellation notice" of Debtor's surety bond violated the automatic stay.

## SANCTIONS

Having found Ohio Casualty violated the automatic stay, the Court, by separate order, will schedule a final evidentiary hearing to consider whether sanctions are appropriate pursuant to Section 362(h).

The Court notes prior to the effective date of the cancellation of the surety bond, this Court entered a preliminary injunction enjoining Ohio Casualty from cancelling the bond.[4] Therefore, Debtor's damages, if any, must be based on actual damages suffered as a direct result of the notification of cancellation and any failure of Ohio Casualty to honor its agreement under the bond.

## DEFENDANT STATE OF FLORIDA

The State of Florida argues its action to revoke Debtor's license does not violate the automatic stay because Section 362(b)(4) provides a governmental unit may take action to enforce its police or regulatory powers notwithstanding the automatic stay. The license requirement, the State contends, falls within its police and regulatory power. The Court agrees.

■ State government actions may be excepted from the automatic stay provision if the action is taken to enforce its police or regulatory powers. Section 362(b)(4). The exception is, however, to be construed narrowly. 124 Cong.Rec. H.11092 (daily ed. Sept. 28, 1978). The policy behind excepting certain state action is to allow the government to continue to protect public health and safety without having to seek relief from the stay. *Id.* It appears from legislative history the exception is not intended to permit the government to protect pecuniary interest of its own or the debtor's.[5] It is clear from the record the license requirement is for the benefit and protection of potential mobile home purchasers. Consumer protection is included in the ambit of the government's police and regulatory powers. Actions taken by the State of Florida as regard the license clearly go to the State's interest in public protection.

The Court finds the State of Florida mobile home dealer license requirement is a regulatory act designed to protect consumers. Further, any actions taken by the State of Florida to enforce the license re-

---

**4.** The order granting preliminary injunction was entered on April 23, 1990.

**5.** *Contra U.S.A. v. Commonwealth Companies Inc. and Commonwealth Electric Co. Inc. (In re Commonwealth Companies Inc. and Commonwealth Electric Co. Inc.),* 913 F.2d 518 (8th Cir. 1990).

quirement fall within the Section 362(b)(4) exception to the automatic stay.

Debtor also argues the State of Florida violates the nondiscrimination provision of Section 525. This argument is without merit. The notice of revocation of Debtor's license specifically states the license will be revoked if Debtor does not obtain a replacement surety bond. The State's action is based solely on Debtor's lack of surety bond coverage and not Debtor's bankruptcy filing.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Defendant Ohio Casualty Insurance Company violated the automatic stay by issuing a "cancellation notice" of Debtor's surety bond. The Court will enter a separate order scheduling a final evidentiary hearing to determine if sanctions should be entered against Ohio Casualty pursuant to Section 362(h). It is further

ORDERED, ADJUDGED AND DECREED the preliminary injunction is extinguished. The automatic stay shall remain in effect until such time as the Court has the opportunity to consider the issue of sanctions. It is further

ORDERED, ADJUDGED AND DECREED that Defendant State of Florida Department of Highway Safety and Motor Vehicles, Division of Motor Vehicles did not violate the automatic stay. It is further

ORDERED, ADJUDGED AND DECREED that Defendant State of Florida Department of Highway Safety and Motor Vehicles, Division of Motor Vehicles did not violate the nondiscrimination provision of Section 525.

DONE AND ORDERED.