COMMODITY FUTURES TRADING COMMISSION, Plaintiff,

v.

AVCO FINANCIAL CORP., Anthony Vartuli and J. Michael Gent, Defendants.

No. 97 Civ. 3119(JFK).

United States District Court, S.D. New York.

Sept. 29, 1997.

Commodity Futures Trading Commission, New York, NY (Ernesto Marrero, Jr., Karl D. Cooper, of Counsel), for plaintiff.

Parson & Brown, New York, NY (Paul M. Brown, of Counsel), for defendants.

### OPINION and ORDER

KEENAN, District Judge.

Before the Court is the Defendants' motion to dismiss this action, pursuant to Fed.R.Civ. Pro. 12(b)(6), for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court denies the motion.

### Background

#### A. The Underlying Action

This civil enforcement action brought by the Commodity Futures Trading Commission (the "CFTC") is based upon Defendant AVCO Financial Corporation's ("AVCO") manufacture, advertisement and sale of a computer software program called "Recurrence" that generates specific recommendations to advise a customer to buy, sell or exit positions in exchange-traded futures contracts on Swiss francs and Japanese Yen. Defendant AVCO, Defendant Gent, the chief executive officer of AVCO, and Defendant Vartuli, the president and sole shareholder of AVCO, are not registered with the CFTC as commodity trading advisors.

The Complaint alleges the following facts, which the Court assumes as true for purposes of this motion: AVCO customers pay AVCO's licensing fee for the Recurrence software program, install the program on their personal computers, procure a marketing service to feed current market prices to their computer, and then act on the instructions given by Recurrence based upon the software's analysis of the current market prices. Recurrence gives the customers a specific buy or sell recommendation, as well as a specific stop and profit objective. The customers then call in their orders, pursuant to Recurrence's recommendations, to their brokers. Recurrence is advertised as monitoring the market and the customer's position as the trading day progresses. Then, when additional instructions are warranted, the Defendants' system again creates an on-screen message and audio alert for the customer to follow immediately, exactly as instructed by the program. AVCO circulated an advertisement in the form of a "Dear Fellow Trader" letter that provided the following explanation of the Recurrence system:

> When a historically profitable pattern develops, the system uses several parameters to evaluate the pattern in terms of the probability of profit or loss. If the percentages are greatly in your favor, Recurrence instantly signals a trade with both a screen message and audio alert. The message gives you a specific buy or sell recommendation, as well as a specific stop and profit objective. You just call your broker and give the complete order (you can read the instructions right off your screen) and then sit back and watch as Recurrence monitors that market and your position in real time. When your profit objective is reached—or your stopped out—Recurrence alerts you again with an on-screen message and audio alert ... you must be willing to let the system 'call the shots,' and overcome your natural tendency to second-guess it.

Compl. ¶ 30. Many of AVCO's customers and the brokers who traded for customers on the basis of Recurrence's recommendations "telephoned AVCO to ensure that AVCO agreed with the recommendations the customers and brokers were getting from the system. Several placed orders only after ... AVCO employees confirmed [Recurrence's] recommendations." Compl. ¶ 31. AVCO has advertised the Recurrence program in such publications as *Futures, compuServe Magazine, Technical Analysis of Stocks and Commodities Magazine, The New York Times, The Washington Post*, as well as through direct mail and phone solicitations, and promoted the program in its partnership packet and through promotional materials. These publications contain such statements as: The system is "automatic" and "all you have to do is decide whether or not to take advantage of the trade," Compl. ¶ 29(b); "You'll be advised on what pattern is present, at what price to buy or sell, at what price to place your protective stop, and where to take profits ... All the trader needs to do is call their [sic] broker and place the appropriate trades," Compl. ¶ 29(d); "Those traders with the vision, foresight and lack of ego necessary to let Recurrence IV tell them when to trade will begin taking profits immediately," Compl. ¶ 29(d); "Recurrence III makes money automatically", Compl. ¶ 33(a); Recurrence IV "Turns $2,500 into $121,000 in 5 years!", Compl. ¶ 33(b); "Between Jan. 1 1989 and December 31, 1994, trading *only* Swiss Franc futures, the system turned a $10,000 trading account into a $522,800 *fortune* — a return of 855% per years!", Compl. ¶ 33(d); "Our basic portfolio had average earnings of over $81,000 per year for six consecutive years", Compl. ¶ 33(e); "Guarantee: If the Recurrence Program does not produce a Total Net profit after 1 full year from the date of purchase, [AVCO] will refund 100% of your purchase price", Compl. ¶ 40(c). In direct response to questions from customers as whether Recurrence's performance numbers were based on real trading, AVCO employees told customers that Recurrence's performance record was based on real trades, despite the fact that the promoted performance record was based on a hypothetical trading history. In addition, AVCO circulated an advertisement that stated:

> Also for new traders, and for those who can't watch the markets during trading hours, we have developed a working relationship with a few special brokers using

Recurrence and authorized by AVCO Financial corporation ... [T]hese authorized brokers can even actually trade the system's order for you if you own a copy of Recurrence. So if you can't monitor the system yourself, you can still take advantage of the time-proven profitability of Recurrence.

Compl. ¶ 30.

The CFTC asserts that, through the Recurrence program, AVCO acts as a commodity trading advisor by providing investment advice for trading commodity futures. Insofar as AVCO is not registered as a commodity trading advisor, the CFTC argues that AVCO violates the CEA. The CFTC further claims that AVCO's promotional statements to actual and prospective customers contain misrepresentations as to the profitability of the advice given by Recurrence, the accuracy of Recurrence, the performance history of Recurrence, and the risks involved in trading commodity futures with Recurrence. Based on the activities alleged above, the Complaint states three counts against the Defendants: (1) solicitation fraud in violation of the CEA; (2) fraud by a commodity trading advisor and fraudulent advertising in violation of the CEA; and (3) acting as a commodity trading advisor without registering in violation of the CEA. The CFTC has moved for preliminary injunctive relief in this case, and the parties consented to the entry of an order preventing the Defendants from engaging in the activities at issue in this action pending a decision on the preliminary injunction motion. The CFTC also seeks disgorgement, an order assessing civil penalties against the Defendants, and an order of restitution directing the Defendants to make whole each and every client for all losses sustained due to the Defendants' illegal actions.

Defendants move to dismiss all three counts in the Complaint on the grounds that the CFTC has not alleged facts demonstrating that AVCO is a commodity trading advisor under the CEA, and therefore Defendants argue that AVCO is not amenable to the CFTC's regulatory jurisdiction. Defendants also assert that the count one claim must be dismissed because the Complaint has failed to satisfy the requirement that the alleged fraud be "in connection with" an order to make or the making of a "contract for sale of any commodity for future delivery."

## B. AVCO's Bankruptcy

On August 25, 1997, after this motion was fully briefed, Defendant AVCO filed a voluntary petition for bankruptcy. As a general rule, such a filing by a defendant automatically stays any action against the defendant. *See* 11 U.S.C. § 362(a). However, § 362(b)(4) of the Bankruptcy Code expressly exempts actions or proceedings brought "by a governmental unit to enforce such governmental unit's police or regulatory power" from the automatic stay afforded bankruptcy debtors. *Id.* § 362(b)(4). Insofar as the CFTC is a "governmental unit," this action was brought to enforce the CFTC's police power and effectuate the public policy of the CEA rather than adjudicate private rights or pursue restitution for the government, and the relief sought by the CFTC is designed to end the CEA violations, make the alleged fraud unprofitable, deter future violations of the CEA and serve the policies underlying the CEA, the Court concludes that this action is not stayed as against AVCO and the CFTC may proceed with the prosecution of this civil enforcement action. *See CFTC v. Incomco, Inc.,* 649 F.2d 128, 133 (2d Cir. 1981) ("The commencement or continuation of actions brought by governmental agencies to enforce regulatory or police powers is specifically exempted from the automatic stay provisions of the [Bankruptcy Code]."); *SEC v. Towers Fin. Corp.,* 205 B.R. 27 (Bankr.S.D.N.Y.1997) (holding that SEC enforcement action seeking injunctive relief and disgorgement was exempted from automatic stay because the action served to effectuate public policy); *Ngan Gung Restaurant, Inc. v. People of the State of New York,* 183 B.R. 689, 694 (Bankr.S.D.N.Y.1995) (holding that enforcement action was exempted from the automatic stay because "the request to enjoin the defendants from further violations of the [New York State Labor Law] and the request for unpaid wages and liquidated damages are simply a method of enforcing the policies underlying [that law] ").

### Discussion

A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that a plaintiff can prove no set of facts in support of a claim that would entitle the plaintiff to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The factual allegations set forth in the complaint must be accepted as true, *see Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990), and the court must view those allegations in the light most favorable to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The burden on the moving party is heavy because "the sanction of dismissal is harsh," *Duncan v. AT & T Communications, Inc.,* 668 F.Supp. 232, 234 (S.D.N.Y.1987), and because "the purpose of pleading is to facilitate a proper decision on the merits." *Conley,* 355 U.S. at 48, 78 S.Ct. at 103.

### A. Whether the Complaint adequately alleges that AVCO was a commodity trading advisor under the CEA

Under 7 U.S.C. § 1a(5)(A), a person is a commodity trading advisor if that person: (1) advises others about the value of or the advisability of trading in commodity futures contracts, (2) "either directly or through publications, writings or electronic media," (3) for compensation or profit, (4) unless that person is "the publisher or producer of any print or electronic data of general or regular dissemination," if such publisher's or producer's provision of commodity futures trading advice is "solely incidental to the conduct of [its] business or profession." 7 U.S.C. § 1a(5)(A)–(C). The Complaint alleges that AVCO advises customers, through the Recurrence software program, as to the advisability of trading futures contracts on Swiss francs and Japanese yen. *See* Compl. ¶¶ 23–24, 42. Customers allegedly paid AVCO from $2500 to $4500 for the right to obtain the advice from the Recurrence system. *See* Compl. ¶ 42. The Recurrence system is alleged to provide messages on the customer's computer screen that give the customer a specific buy or sell recommendation, as well as a specific stop and profit objective, based upon the systems analysis of the current market prices. *See* Compl. ¶ 24. The system allegedly monitors the market and the customer's position as the trading day progresses, and when additional instructions are warranted, the system again creates an on-screen message and audio alert for the customer to follow, exactly as instructed by the program. *See* Compl. ¶ 24. Customers then call in their orders as instructed by the system's on-screen message. The CFTC asserts that many AVCO customers telephoned AVCO employees to ensure that AVCO agreed with Recurrence's recommendations, and some customers placed orders only after confirmation of the recommendations. See Compl. ¶ 31. Additionally, AVCO allegedly provided a service to customers under which brokers authorized by AVCO could trade on a customer's behalf according to Recurrence's instructions if the customer could not monitor the system throughout trading hours. See Compl. ¶ 30. The CFTC also alleges that AVCO promoted itself to actual and potential customers as providing highly profitable commodity futures trading advice through the Recurrence program. *See* Compl. ¶¶ 29–30. Taking all of these allegations as true, and viewing them in the light most favorable to the CFTC, the Court concludes that the Complaint adequately alleges that AVCO is a commodity trading advisor under the plain language of the CEA.

Defendants rely on *Lowe v. SEC,* 472 U.S. 181, 211, 105 S.Ct. 2557, 2573–74, 86 L.Ed.2d 130 (1985), and assert that AVCO is not a commodity trading advisor because AVCO does not provide personalized investment advice. In *Lowe,* the Supreme Court interpreted a statutory exclusion to the definition of an "investment advisor" under the Investment Advisers Act ("IAA"), which excepted from the registration provisions of the IAA "the publisher of any bona fide newspaper, news magazine or business or financial publication of general and regular circulation." *Id.* at 204, 105 S.Ct. at 2570. The Supreme Court held,

As long as the communications between petitioners and their subscribers remain entirely impersonal and do not develop into

the kind of fiduciary, person-to-person relationships that were discussed at length in the legislative history of the Act and that are characteristic of investment adviser-client relationships, we believe the publications are, at least presumptively, within the exclusion and thus not subject to registration under the Act.

*Id.* at 210, 105 S.Ct. at 2573. This Court observes, however, that the statutory exclusion to the definition of a commodity trading adviser under the CEA is narrower than the IAA exclusion addressed in *Lowe.* The CEA commodity trading advisor definition excludes "the publisher or producer of any print or electronic data of general and regular dissemination ... *only if the furnishing of such [investment advise] services is solely incidental to the conduct of their business or profession.*" 7 U.S.C. § 1a(5)(B)–(C) (emphasis added). From the allegations in the Complaint, the Court can draw the inference that AVCO's business was to provide commodity trading advice through the Recurrence program. Thus, the statutory exclusion to a commodity trading advisor does not apply. Furthermore, even if the Court were to apply the Lowe holding to the statutory exclusion in this case, the Court concludes that the Complaint alleges facts indicating that AVCO provides personalized investment advice to customers. According to the Complaint, unlike a generally disseminated newsletter which provides nonpersonal investment advice, AVCO's investment advice is communicated on an irregular basis in response to certain market conditions, the Recurrence program gives the customer specific buy and sell and stop and profit objective recommendations, the program monitors the customer's position throughout the trading day and provides specific additional instructions as the market changes for the customer to immediately follow, customers telephone AVCO employees for advice as to the Recurrence recommendations, and AVCO provides customers a service by which brokers authorized by AVCO can actually make trades pursuant to the system's orders for customers who cannot monitor the system during trading hours. *See* Compl. ¶¶ 23–24, 29–31. These allegations negate the Defendants' assertions that AVCO's investment advice is entirely impersonal and not characteristic of investment adviser-client relationships meant to be covered by the CEA. In light of this conclusion, the Court need not address the Defendants' arguments that the first amendment protects against government regulation of nonpersonalized investment advice, which the Defendants' claim is the type of advice provided by Recurrence.

**B. Whether the Complaint adequately alleges that the alleged fraud was "in connection with" the sale of a commodity**

Count three of the Complaint alleges that the Defendants are in violation of 7 U.S.C. § 6b(a)(1), which prohibits any person from cheating or defrauding another person "in connection with any order to make, or the making of, any contract for sale of any commodity for future delivery...." The CFTC alleges that

from at least 1993 to the present ... the Defendants ... cheated or defrauded or attempted to cheat or defraud other persons by making false, deceptive or misleading representations or omissions of material fact during the course of soliciting customers to purchase computerized commodity futures trading systems intended to be used, and which were used by customers, in connection with the purchase or sale of commodity futures contracts....

*Compl.* ¶ 47. The alleged misrepresentations at issue include AVCO's advertisements that the Recurrence program generated large profits, had an extremely high degree of accuracy in picking winning trades, and involved little or risk of loss based upon Recurrence's past results obtained in actual trading. *See* Compl. ¶¶ 33–45. The Complaint also alleges that AVCO failed to disclose that Recurrence's advertised performance record was based upon a hypothetical trading history, rather than actual trading.

Defendants contend that the allegations in support of the § 6b claim do not meet the "in connection with" requirement of § 6b because the factual allegations do not show "both a transaction (the order or making of the contract), and a link between the fraud and the transaction (that the fraud was in

connection with the transaction)." Defs. Mem. at 22. The Court disagrees.

■ The Complaint's detailed allegations that AVCO failed to disclose and minimized the risks of commodity futures trading with the Recurrence system, *see* Compl. ¶¶ 40–43, satisfy the "in connection with requirement" of § 6b. *See Saxe v. E.F. Hutton & Co., Inc.,* 789 F.2d 105, 109–12 (2d Cir.1986). The Complaint's detailed allegations that AVCO failed to disclose that Recurrence's advertised performance record did not represent the results of actual trading but hypothetical trading, *see* Compl. ¶¶ 37–39, also satisfy the "in connection with requirement" of § 6b. *See CFTC v. Skorupskas,* 605 F.Supp. 923, 933 (E.D.Mich.1985) ("the failure to disclose information that a performance record does not represent the results of actual trading but of hypothetical or fictitious trading" held to violate § 6b). Insofar as the Defendants' alleged misrepresentations dealt with the profitability and risks associated with following Recurrence's recommendations in trading commodity futures contracts, and numerous contracts were allegedly traded pursuant to Recurrence's recommendations, the CFTC has alleged a sufficiently close nexus between the alleged fraud and the commodity futures trading to satisfy the "in connection with" requirement of § 6b. *See Saxe,* 789 F.2d at 109–12.

### Conclusion

For the reasons stated above, the Court denies the Defendants' motion to dismiss. The parties are to appear before the Court for a conference in courtroom 20c on October 31, 1997 at 10:00 a.m.

**SO ORDERED.**