Hon. Elizabeth McCaul Formal Opinion Superintendent No. 2000-F6 Banking Department Two Rector Street New York, N Y 10006
Dear Superintendent McCaul:
Your counsel has requested an opinion regarding whether a mortgage banker's or mortgage broker's filing for bankruptcy under the Federal Bankruptcy Code ("Code") stays a proceeding, or the subsequent commencement thereof, by the New York State Banking Department ("NYSBD") pursuant to Banking Law § 595 to suspend or revoke a license of a mortgage banker, or to suspend or delete the name of a mortgage broker from the mortgage broker roll on the grounds of fraudulent consumer practices or failure to maintain adequate capital. Counsel further inquires as to the effect on NYSBD's regulatory, supervisory and enforcement powers of a mortgage banker's or mortgage broker's invocation of remedies under the New York State Debtor and Creditor Law.
11 U.S.C. § 362(a)(1) provides for an automatic stay, upon the filing of a bankruptcy petition under any chapter of the Code, of "the commencement or continuation, including the issuance or employment of process, of a[n] . . . administrative . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." Thus, "[a]s a general rule, the filing of a . . . bankruptcy petition operates as an automatic stay of administrative proceedings against the debtor." In re Wade, 948 F.2d 1122,1123 (9th Cir. 1991).
However, "Congress did not intend for bankruptcy laws to abrogate the States' police powers," In re Berry Estates, Inc., 812 F.2d 67, 71 (2d Cir.), cert. denied, 484 U.S. 819 (1987), and recognized "that the stay provision was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions." United States v. Nocolet, Inc., 857 F.2d 202,207 (3d Cir. 1988). Accordingly, section 362(b)(4) provides for an exception from the automatic stay for "the commencement or continuation of an action or proceeding by a governmental unit[1] . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's police or regulatory power." See Securities andExchange Comm'n v. Brennan, 230 F.3d 65, 71 (2d Cir. 2000) (quoting Cityof N.Y. v. Exxon Corp., 932 F.2d 1020, 1024 (2d Cir. 1991)) ("the purpose of this exception is to prevent a debtor from `frustrating necessary governmental functions by seeking refuge in bankruptcy court'").
As the legislative history of this particular exception explains:
 Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.
S.R. Rep. No. 95-989, at 52 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5838 (footnotes omitted). Moreover,
 [u]nder present law, there has been some overuse of the stay in the area of governmental regulation. For example, in one Texas bankruptcy court, the stay was applied to prevent the State of Maine from closing down one of the debtor's plants that was polluting a Maine river in violation of Maine's environmental protection laws. In a Montana case, the stay was applied to prevent Nevada from obtaining an injunction against a principal in a corporation who was acting in violation of Nevada's anti-fraud consumer protection laws. The bill excepts these kinds of actions from the automatic stay. The States will be able to enforce their police and regulatory powers free from the automatic stay.
H.R. Rep. No. 95-595, at 174-175 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6135.
Thus, "Congress clearly intended for the police power exception to allow governmental agencies to remain unfettered by the bankruptcy code in the exercise of their regulatory powers." In re Commerce Oil Co., 847 F.2d 291,295 (6th Cir. 1988); see generally Collier Bankruptcy Manual § 362.05[4] (1999). In addition, the Supreme Court has rejected the contention that "in order for § 362(b)(4) to obtain, a court must first determine whether the proposed exercise of police or regulatory power is legitimate." Board of Governors of Fed. Reserve Sys. v. MCorpFinancial, Inc., 502 U.S. 32, 40 (1991).
There are two tests commonly applied by the federal courts to determine whether an action by a governmental unit falls within the automatic stay or is exempted therefrom under the police or regulatory power exception of section 362(b)(4). Under the "pecuniary purpose" test, "the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare [and] [i]f the government action is pursued solely to advance a pecuniary interest of the governmental unit, the stay will be imposed." In re Universal LifeChurch, Inc., 128 F.3d 1294, 1297 (9th Cir. 1997), cert. denied,524 U.S. 952 (1998); see also In re Commonwealth Cos., 913 F.2d 518, 523
(8th Cir. 1990) ("as a general matter, § 362(b)(4) does not include governmental actions that would result in a pecuniary advantage to the government vis a vis other creditors of the debtor's estate"). The "public policy" test "distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating private rights [and] [u]nder this second test, actions taken for the purpose of advancing private rights are not excepted from the stay." Eddleman v.United States Dept. of Labor, 923 F.2d 782, 791 (10th Cir. 1991); seealso National Labor Rel. Bd. v. Edward Cooper Painting, Inc., 804 F.2d 934,942 (6th Cir. 1986) (same).
Pursuant to the foregoing principles, the police or regulatory power exception has been held to exempt from the automatic stay a myriad of governmental actions and proceedings commenced to protect the public welfare and not designed merely to protect a pecuniary interest of the governmental unit in the debtor's estate. See, e.g., Board of Governorsof Fed. Reserve Sys. v. MCorp Financial, Inc., 502 U.S. 32 (1991) (administrative proceedings by Board of Governors of Federal Reserve System for violations of Board's regulation and Federal Reserve Act); Inre Yellow Cab Coop. Ass'n, 132 F.3d 591 (9th Cir. 1997) (Colorado Public Utilities Commission's restriction of the scope of a certificate issued to the debtor); In re Universal Life Church, Inc., 128 F.3d 1294 (9th Cir. 1997), cert. denied, 524 U.S. 952 (1998) (Internal Revenue Service revocation of tax-exempt status of religious corporation); In re Javens,107 F.3d 359 (6th Cir. 1997) (municipality's demolition of debtor's condemned buildings); National Labor Relations Bd. v. 15th Ave. IronWorks, Inc., 964 F.2d 1336 (2d Cir. 1992) (National Labor Relations Board enforcement proceeding); In re Wade, 948 F.2d 1122 (9th Cir. 1991) (attorney disciplinary proceeding brought by Arizona State Bar); City ofN.Y. v. Exxon Corp., 932 F.2d 1020 (2d Cir. 1991) (action by City under Comprehensive Environmental Response Compensation and Liability Act);Eddleman v. United States Dept. of Labor, 923 F.2d 782 (10th Cir. 1991) (Department of Labor proceeding for violation of Service Contract Act);In re Commonwealth Cos., 913 F.2d 518 (8th Cir. 1990) (civil fraud action by United States under False Claims Act); United States v. Nicolet,Inc., 857 F.2d 202 (3d Cir. 1988) (action by United States under Comprehensive Environmental Response, Compensation, and Liability Act);Equal Opportunity Employment Comm'n v. McLean Trucking Co., 834 F.2d 398
(4th Cir. 1987) (actions by Equal Opportunity Employment Commission under Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964); Commodity Futures Trading Comm'n v. Avco Financial Corp.,979 F. Supp. 232 (S.D.N.Y. 1997) (civil enforcement action by Commodity Futures Trading Commission); Securities and Exchange Comm'n v. TowersFinancial Corp., 205 B.R. 27 (S.D.N.Y. 1997) (action by Securities and Exchange Commission for violation of federal securities laws); In re NganGung Restaurant, Inc., 183 B.R. 689 (S.D.N.Y. 1995) (action by State Attorney General for violation of Labor Law).
Article 12-D of the Banking Law, including the licensure and registration requirements for mortgage bankers and mortgage brokers, was plainly enacted pursuant to the State's police and regulatory power to protect the welfare of its citizenry in the context of residential mortgage lending. As Banking Law § 589 states,
 [c]onsistent with the purposes of promoting mortgage lending for the benefit of our citizens by responsible providers of mortgage loans and services and avoiding requirements inconsistent with legitimate and responsible business practices in the mortgage lending industry, the purpose of this article is to protect New York consumers seeking a residential mortgage loan and to ensure that the mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices.
Thus, an administrative proceeding by the NYSBD pursuant to Banking Law § 595 to suspend or revoke a license of a mortgage banker or to suspend or delete the name of a mortgage broker from the mortgage broker roll on the grounds of fraudulent consumer practices or failure to maintain adequate capital would qualify as "an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power" within the contemplation of11 U.S.C. § 362(b)(4). A proceeding premised upon these grounds would not relate to the protection of any pecuniary interest of the NYSBD in the debtor's property and, insofar as the proceeding is aimed at effectuating public policy and not adjudicating private rights, we believe that it would be exempt from the automatic stay under this police or regulatory powers exception. See In re Synergy Dev. Corp., 140 B.R. 958
(Bankr.S.D.N.Y. 1992) (State's action against debtor for failure to satisfy bond requirement for health clubs falls within section 362(b)(4) exception); In re Fitch, 123 B.R. 61 (Bankr.D.Idaho 1991) (State Department of Insurance proceeding to revoke debtor's insurance agent license falls within the exception); In re Edwards Mobile Home Sales,Inc., 119 B.R. 857 (Bankr.M.D.Fla. 1991) (revocation of mobile home sales dealer's license by State Department of Highway Safety and Motor Vehicles falls within the exception). In addition, because section 362(b)(4) excepts both the "commencement or continuation" of actions or proceedings within its terms, such a proceeding would be exempted from the automatic stay regardless of whether it is pending at the time of the bankruptcy filing or is subsequently commenced. See also 28 U.S.C. § 959(b) ("a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof").
Indeed, Congress has recently expanded the scope of the police or regulatory powers exception. A prior version of section 362(b)(4) exempted an action or proceeding pursuant to a governmental unit's police or regulatory power only from the automatic stay set forth in section 362(a)(1), encompassing the commencement or continuation of an administrative proceeding against the debtor, and not from the stay set forth in section 362(a)(3), encompassing "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." As a result, one court concluded that, although an agency was entitled to commence or continue an administrative proceeding notwithstanding the automatic stay, it could not actually proceed to revoke a license possessed by the debtor without seeking relief from the automatic stay, because the revocation constituted an exercise of control over property of the estate. See In reNational Cattle Congress, 179 B.R. 588 (Bankr.N.D.Iowa 1995), remanded onother grounds, 91 F.3d 1113 (8th Cir. 1996) (pari-mutuel license); seealso Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581,591 (9th Cir. 1992) ("There is no governmental powers exception to section 362(a)(3), the provision at issue here"); but see In re Javens,107 F.3d 359, 369 (6th Cir. 1997) ("the universe of actions that trigger an automatic stay under § 362(a)(3) does not include those governmental actions entitled, under § 362(b)(4), to an exception from the automatic stay").
In 1998, Congress amended section 362(b)(4) (Pub.L. No. 105-277,112 Stat. 2681-886) to make the police or regulatory power exception explicitly applicable to stays arising under section 362(a)(3), as well as under sections 362(a)(2) and (a)(6) (encompassing, respectively, "the enforcement of, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title"[2] and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title"). See Securities and Exchange Comm'n v. Brennan, 230 F.3d 65,73-75 (2d Cir. 2000) (discussing 1998 amendments). Accordingly, where the governmental unit's action or proceeding falls within the parameters of the 362(b)(4) exemption, it is now clear that acts to obtain possession or exercise control over the property of the debtor's estate, not involving the enforcement of a money judgment, would not be stayed. SeeIn re PMI-DVW Real Estate Holdings, L.L.P., 240 B.R. 24, 30
(Bankr.D.Ariz. 1999) ("because the amended statute also includes an exception to section 362(a)(3), the police and regulatory power exception applies to acts by the government to obtain possession of property of the Bankruptcy estate or to exercise control over Bankruptcy estate property"); see also Collier Bankruptcy Manual § 362.05[4][a] (1999). Thus, even assuming that a mortgage banker's license or a mortgage broker's registration qualifies as "property" of the debtor's estate as that term is expansively defined by the Code, see 11 U.S.C. § 541
(estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"), the suspension or revocation of a mortgage banker's license or a mortgage broker's registration would not be barred under the automatic stay pursuant to a NYSBD proceeding within the section 362(b)(4) exception.
11 U.S.C. § 525 must also be considered. Section 525(a) provides that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against" any person who has been a debtor or bankrupt, "solely because" such person has been a debtor or bankrupt or has been insolvent or has not paid a dischargeable debt. The statute "is designed to prevent governmental units from frustrating the fresh start policy of the Code by discriminating against persons who have been debtors under the Code or bankrupts or debtors under the prior Act." Collier Bankruptcy Manual
§ 525.02 (1999). However, "this prohibition is not violated where the denial of a license is based on other factors such as the debtor's lack of financial responsibility" and "does not prohibit a state agency's examination of financial responsibility pursuant to state regulations in determining whether to suspend a debtor's license." In re National CattleCongress, Inc., 179 B.R. 588, 598 (Bankr.N.D.Iowa 1996), remanded onother grounds, 91 F.3d 1113 (8th Cir. 1996). As the legislative history of the statute explains:
 The prohibition extends only to discrimination or other action based solely on the basis of the bankruptcy, on the basis of insolvency before or during bankruptcy prior to a determination of discharge, or on the basis of nonpayment of a debt discharged in the bankruptcy case. . . . It does not prohibit consideration of other factors, such as future financial responsibility or ability, and does not prohibit imposition of requirements such as net capital rules, if applied nondiscriminatorily.
S.R. Rep. No. 95-989, at 81 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5867 (emphasis added). Similarly,
 [t]he prohibition does not extend so far as to prohibit examination of the factors surrounding the bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts, or the examination of prospective financial condition or managerial ability. The purpose of the section is to prevent an automatic reaction against an individual for availing himself of the protection of the bankruptcy laws. Most bankruptcies are caused by circumstances beyond the debtor's control. To penalize a debtor by discriminatory treatment as a result is unfair and undoes the beneficial effects of the bankruptcy laws. However, in those cases where the causes of a bankruptcy are intimately connected with the license, grant, or employment in question, an examination into the circumstances surrounding the bankruptcy will permit governmental units to pursue appropriate regulatory policies and take appropriate action without running afoul of bankruptcy policy.
H.R. Rep. No. 95-595, at 165 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6126 (footnotes omitted); see Collier Bankruptcy Manual § 525.02 (1999) ("if there is a bona fide nondiscriminatory examination of future financial responsibility in a particular licensing process, applicable to all persons regardless of the existence of prior debts or any bankruptcy filings, section 525 is not applicable"); see also In reChristmas, 102 B.R. 447, 461 (Bankr.D.Md. 1989) ("the prohibitions in the Bankruptcy Code against discrimination do not require that debtors receive favorable treatment by being excused from a state requirement of financial responsibility from which nondebtors are not excused").
Applying these principles, we do not think that a suspension or revocation proceeding premised upon fraudulent consumer practices or failure to maintain adequate capital would violate the anti-discrimination provision of section 525(a). A proceeding on the grounds of fraudulent consumer practices would clearly not be based solely upon the debtor's bankruptcy filing. While a mortgage banker's or broker's ability to maintain minimum capital requirements may well be connected to the circumstances necessitating a bankruptcy filing, it does not necessarily follow that the NYSBD's suspension of a license or registration for this reason would be solely on the basis of the bankruptcy within the meaning of section 525. As set forth above, the statute as interpreted does not proscribe a bona fide, nondiscriminatory examination of future financial responsibility in a licensing process and the legislative history explicitly cites net capital requirements as an example of a factor which may lawfully be considered. Accordingly, it is our opinion that, so long as action against a mortgage banker or broker is not taken for the sole reason that it has filed for bankruptcy, the NYSBD would not be prohibited under section 525 from enforcing nondiscriminatory capital requirements against a mortgage banker or broker in an administrative proceeding falling within 11 U.S.C. § 362(b)(4)'s police or regulatory power exception to the automatic stay.
Finally, we find no authority for the proposition that a mortgage banker's or broker's invocation of remedies under the New York Debtor and Creditor Law would affect this regulatory authority of the NYSBD. The New York Debtor and Creditor Law does not contain a provision analogous to the automatic stay of the Federal Bankruptcy Code.
We conclude that a proceeding by the NYSBD pursuant to Banking Law §595 to suspend or revoke a license of a mortgage banker or to suspend or delete the name of a mortgage broker from the mortgage broker roll on the grounds of fraudulent consumer practices or failure to maintain adequate capital, whether commenced prior or subsequent to the mortgage banker's or mortgage broker's filing for bankruptcy under the Code, would fall within the police or regulatory power exception to the automatic stay in 11 U.S.C. § 362(b)(4) and thus would not be stayed by the bankruptcy filing. So long as there is sufficient evidence that NYSBD's action was not taken solely because of the bankruptcy filing itself, a proceeding on these grounds would not be prohibited by11 U.S.C. § 525. A mortgage banker's or broker's invocation of remedies under the New York Debtor and Creditor Law would not affect this regulatory authority of the NYSBD.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] "Governmental unit" is defined by the Code to include an "agency . . . of . . . a State." 11 U.S.C. § 101(27).
[2] Stays arising under 362(a)(2), except to the extent that the governmental unit was seeking to enforce a money judgment, were already excepted under prior section 362(b)(5), which subsection was deleted by the 1998 amendments and incorporated into subsection 362(b)(4).